# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

ALAN JOHNSON,                              :

      Plaintiff,                        :
                              Case No. 3:13cv00383

 vs.                                       :
                              District Judge Walter H. Rice
CAROLYN W. COLVIN,                         :   Chief Magistrate Judge Sharon L. Ovington
Acting Commissioner of the Social
Security Administration,                   :

      Defendant.                        :

# REPORT AND RECOMMENDATIONS[1]

## I.  Introduction

     Plaintiff Alan Johnson brings this action under 42 U.S.C. § 405(g) for review of

the final decision of the Commissioner of Social Security ("Commissioner") denying his

application for Supplemental Security Income ("SSI")[2].  Johnson protectively filed his

application on July 31, 2009, alleging that he has been disabled since March 17, 2009.[3] [4]

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

[2] Johnson also filed an application for Disability Insurance Benefits in July 2009, but was found to not have insured status at any point in time.  (*PageID#* 193-95, 202).

[3] Johnson originally filed for benefits in November 2005 and again in January 2007.  (*PageID##* 183-91). The claims were denied and Johnson did not seek reconsideration.  (*PageID#* 224).

[4] Under the controlling regulations, a Plaintiff cannot receive benefits for any period prior to the filing of his application for SSI benefits. 20 C.F.R. § 416.335.  SSI benefits cannot be awarded retroactively. SSR 83-20, 1983 WL 31249, at *1, *7 (1983).

(*PageID##* 196-98).  He claims to be disabled by reason of his inability to read, write, and add; spinal stenosis/back pain; and bi-polar disorder.  (*PageID##* 216, 259).  After his application was denied during the initial administrative proceedings, Johnson was provided a hearing before Administrative Law Judge ("ALJ") Mary F. Withum.  On June 6, 2012, ALJ Withum issued a decision concluding that Johnson was not under a "disability" within the meaning of the Social Security Act, and was therefore not eligible for SSI.  (*PageID##* 40-53).  The ALJ's decision and the resulting denial of benefits became the final decision of the Social Security Administration.

This case is before the Court upon Johnson's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #13), Johnson's Reply (Doc. # 14), the administrative record (Doc. # 6), and the record as a whole.

## II.  Background

### A.  Plaintiff's Testimony

Johnson was 29 years old at the time he filed his application for benefits and is therefore considered to be a "younger individual" for purposes of resolving his SSI claim.  *See* 20 C.F.R. § 416.963(c); *see also PageID##* 55, 196.  Johnson has a "limited" education, *see* 20 C.F.R. § 416.964(b)(3); *see also PageID##* 52, 221, 265, and no past relevant work.  (*PageID##* 52, 217, 260).

Johnson testified at the administrative hearing that his major problem is back pain. Johnson had two back surgeries, including a lumbar fusion with the implantation of rods and a steel cage.  (*PageID#* 76).  Johnson testified that his back pain was degenerative,

2

"it's always hurt me." (*PageID#* 77).  It became severe in 2006 when he could not feel his legs.  (*Id.*).  Johnson feels that neither surgery has helped: "It's never going to get better." (*Id.*).  When asked if he would have another surgery, Johnson responded that although "they want to remove another disc," he would not have another surgery because, "it's too much."  (*PageID#* 90).  Johnson takes narcotic pain medications and muscle relaxers for his back pain but acknowledged they are not much help.  (*PageID##* 88-89).  Johnson testified that he spends 90% of each day lying down.  (*PageID#* 94).

Johnson testified that he received disability benefits from when he was a child through the age of 25, when he was incarcerated.  (*PageID#* 67).  Johnson obtained a driver's license when he was 18 but his license has since been suspended for failing to have insurance.  (*PageID#* 69).  Johnson attended a special school for disabled children. (*PageID##* 70-71).  Johnson lives with his girlfriend, their 3 children, and his girlfriend's father.  (*PageID#* 70).  Johnson had attempted a few jobs in the past, but they never lasted more than a couple of weeks.  (*PageID##* 72-74).  Johnson also feels he cannot work because he has no education and cannot read or write.  (*PageID#* 78).

Johnson described problems with depression and anxiety.  (*PageID#* 78).  Johnson cried off and on throughout his administrative hearing.  (*PageID#* 98).  He has emotional breakdowns at least every other day, which can sometimes last for an entire day. (*PageID##* 98-99).

 As to his daily activities, Johnson testified that "I lay around a lot.  I really don't do anything because my back hurts a lot."  (*PageID#* 80).  Johnson lays around watching

TV or sleeping.  (*PageID#* 81).  Family members prepare his meals for him.  (*Id.*).

Johnson needs help putting his pants on because he has difficulty raising his legs by

himself.  (*PageID#* 82).  Johnson sits in a chair while bathing himself.  (*PageID##* 82,

95-96).  After days when Johnson attends doctor's appointments or sees his attorney, his

pain increases and can last up to 4 days.  (*PageID##* 94-95).

Johnson estimated that he can probably walk for a city block and stand for about

10 minutes.  He can squat down to his knees, but cannot bend at all.  He has no problems

with his hands.  He can lift a gallon of milk.  (*PageID#* 90).  He can sit for 30 to 40

minutes at a time, but noted at the hearing he felt he needed to lie down.  (*PageID#* 91).

### B.  Medical Evidence

The administrative record contains many medical records plus opinions from

Johnson's treating and non-treating medical sources.  A detailed description of those

records and opinions is unnecessary because the undersigned has reviewed the entire

administrative record and because both the ALJ and Plaintiff's counsel have accurately

summarized the relevant records concerning Johnson's physical and mental impairments

with citations to specific evidence.  The Commissioner likewise defers to the ALJ's

factual recitation.

## III.  Administrative Review

### A.  "Disability" Defined

The Social Security Administration provides SSI to indigent individuals, subject to

several eligibility requirements.  Chief among these, for purposes of this case, is the

4

"disability" requirement.  To receive SSI, an applicant must be a "disabled individual."
42 U.S.C. §1381a; *see Bowen v. City of New York*, 476 U.S. 467, 470 (1986).  The phrase
"disabled individual" – as defined by the Social Security Act – has specialized meaning
of limited scope.  It encompasses only those who suffer from a medically determinable
physical or mental impairment severe enough to prevent them from engaging in
substantial gainful activity.  42 U.S.C. § 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.
An SSI applicant bears the ultimate burden of establishing that he or she is under a
disability.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).

    **B.**    <u>**Social Security Regulations**</u>

    Administrative regulations require ALJs to resolve a disability claim through a
five-Step sequential evaluation of the evidence.  *See PageID##* 43-45; *see also* 20 C.F.R.
§ 416.920(a)(4).  Although a dispositive finding at any Step terminates the ALJ's review,
*see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the
sequential review considers and answers five questions:

    1.    Is the claimant engaged in substantial gainful activity?

    2.    Does the claimant suffer from one or more severe impairments?

    3.    Do the claimant's severe impairments, alone or in combination, meet
or equal the criteria of an impairment set forth in the Commissioner's
Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

    4.    Considering the claimant's residual functional capacity, can the
claimant perform his or her past relevant work?

5.  Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

## C.  ALJ Withum's Decision

At Step 1 of the sequential evaluation, the ALJ found that Johnson has not engaged in substantial gainful activity since July 31, 2009, the application date.  (*PageID#* 45).

At Step 2 of the sequential evaluation, ALJ Withum concluded that Johnson has the severe impairments of degenerative disc disease of the lumbar spine post fusion, seizure disorder, major depressive disorder, learning disorder, borderline intellectual functioning, antisocial personality disorder, anxiety, and opiate addiction.  (*Id.*).

The ALJ concluded at Step 3 that Johnson did not have an impairment or combination of impairments that met or equaled one of the Listings, including sections 11.02, 11.03,  12.02, 12.04, 12.05, 12.06, 12.07 and 12.08.  (*PageID##* 45-48).

At Step 4, the ALJ evaluated Johnson's RFC and found the following:

After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b).  He can only occasionally climb ladders, ropes or scaffolds, stoop, crouch, kneel or crawl.  The claimant must avoid even moderate exposure to dangerous moving machinery and unprotected heights.  He is limited to 1-2 step tasks in an environment free of fast paced production requirements.  The claimant can only perform jobs that can be learned by demonstration only.  Lastly, he can only frequently interact with the public, coworkers, and supervisors.

(*PageID#* 48).  The ALJ further determined that Johnson's statements concerning his impairments and their impact on his ability to work are inconsistent with the record as a whole and not entirely credible.  (*PageID#* 50).  Johnson has no past relevant work. (*PageID#* 52).

At Step 5, based on the testimony of the VE, the ALJ concluded that – considering Johnson's age, education, work experience, and RFC – he is capable of performing as many as 2,616 jobs at the unskilled light occupational base in the regional area, including such jobs as bakery racker, steamer, or splitter.  (*PageID#* 53).

This assessment, along with the ALJ's findings throughout her sequential evaluation, led her to ultimately conclude that Johnson was not under a disability and hence not eligible for SSI.  (*Id.*).

## IV. __Judicial Review__

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Soc. Sec*., 203 F.3d 388, 389-90 (6th Cir. 1999).  Instead, the ALJ's factual findings are upheld if the substantial-evidence

standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . ." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry, reviewing for correctness the ALJ's legal criteria, may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746.  "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**V.**     **Discussion**

**A.**     **The Parties' Contentions**

In his first assignment of error, Johnson argues that the ALJ failed to properly consider and account for the limiting effects of his severe back pain in appraising his functional capacity.  *See* Doc. #8 at *PageID#* 1207.  Next, Johnson challenges the ALJ's decision to reject the opinion of his treating physician, Dr. Yang.  (*Id.* at *PageID#* 1209).

Johnson also contends that the ALJ erred in failing to properly consider and account for the combined effect of his impairments. (*Id.* at *PageID#* 1212).

Conversely, the Commissioner contends that the ALJ's decision denying benefits to Johnson is supported by substantial evidence. More specifically, the Commissioner asserts that the ALJ appropriately considered all the medical evidence and incorporated the relevant limitations in her findings. Further, the Commissioner contends that the ALJ properly rejected the opinion of Dr. Yang, as it was not supported by the evidence in the record. Accordingly, the Commissioner asserts that the ALJ's decision should be affirmed. (Doc. # 13 at *PageID##* 1237-43).

### B.    Medical Source Opinions

### 1.

### Treating Medical Sources

The treating physician rule, when applicable, requires the ALJ to place controlling weight on a treating physician's or treating psychologist's opinion rather than favoring the opinion of a nonexamining medical advisor or a one-time examining physician or psychologist or a medical advisor who testified before the ALJ. *Blakley,* 581 F.3d at 406 (6th Cir. 2009); *see Wilson*, 378 F.3d at 544 (6th Cir. 2004). A treating physician's opinion is given controlling weight only if it is both well supported by medically acceptable data and if it is not inconsistent with other substantial evidence of record. (*Id.*).

9

"If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of the examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 581 F.3d at 406 (citing *Wilson*, 378 F.3d at 544).

More weight is generally given to the opinions of examining medical sources than is given to the opinions of non-examining medical sources. *See* 20 C.F.R. § 404.1527(c)(1)[5]. Yet the opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight. This occurs because the Commissioner views such medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p. Consequently, opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization. *See* 20 C.F.R. § 404.927(c), (e); *see also* Ruling 96-6p at *2-*3.

### 2.

### Non-Treating Medical Sources

---

[5] 20 C.F.R. §§ 404.1527 and 416.927 were amended effective March 26, 2012. The provisions governing the weight to be afforded a medical opinion were previously found at 20 C.F.R. §§ 404.1527(d) and 416.927(d).

The Commissioner views non-treating medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p, 1996 WL 374180 at *2. Yet the Regulations do not permit an ALJ to automatically accept (or reject) the opinions of a non-treating medical source. *See id.* at *2-*3. The Regulations explain, "In deciding whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive." 20 C.F.R. § 404.1527(b). To fulfill this promise, the Regulations require ALJs to evaluate non-treating medical source opinions under the factors set forth in § 404.1527(d) including, at a minium, the factors of supportability, consistency, and specialization. *See* 20 C.F.R. § 404.1527(e); *see also* Ruling 96-6p at *2-*3.

**C.    Analysis**

Johnson began treating with primary care physician Dr. Han Mok Yang, M.D., in 2004. (*PageID##* 347-59). Johnson underwent a lumbar spine MRI on November 4, 2004, which revealed an annular tear and central disc herniation at L3-4 creating moderate central spinal canal stenosis and mild underlying diffuse disc bulge at L3-4 creating mild bilateral neuroforaminal narrowing. (*PageID##* 361-62).

During his treatment with Dr. Yang, Johnson consistently complained of low back pain radiating into his left lower extremity. (*PageID##* 348-60, 381-85, 1032-39). Dr. Yang attributed Johnson's back pain to the degenerative process at the L4-5 level of Johnson's lumbar spine and the resulting nerve root impingement. (*PageID#* 381).

11

On January 3, 2006, Dr. Yang reported that Johnson "has severe low back pain, [is] unable to move or straighten back at times and is slow moving." (*PageID#* 346).

On November 1, 2010, Dr. Yang completed a Basic Medical Form for the Ohio Department of Job and Family Services. Dr. Yang opined that Johnson could only sit and stand less than 1 hour during an 8 hour workday. He also opined that Johnson is limited to lifting 5 pounds or less and is markedly limited in his ability to push, pull, bend, reach, handle, or perform repetitive foot movements. Dr. Yang based his opinion on Johnson's multiple back surgeries and the metal rods placed in his back, which impair motor function and limit uninterrupted sitting or standing. Dr. Yang concluded that Johnson is "unemployable." (*PageID##* 1108-09).

In rejecting Dr. Yang's opinion as to Johnson's physical limitations, the ALJ determined that his "opinion is riddled with inconsistencies when compared to the medical evidence." (*PageID#* 51). The ALJ found that "although Dr. Yang says that he last saw the claimant in November 2010, the most recent examination occurred in May 2010. During several examinations, the claimant denied any problems. The remaining examinations do not record any examination findings in 2010." (*PageID##* 51-52). According to the ALJ, based on Dr. Yang's records, there is no evidentiary justification for a change in his November 2010 opinion. (*PageID#* 52).

The ALJ, however, presents no meaningful explanation as to how the record or Dr. Yang's clinical findings fail to support, or are otherwise inconsistent with, his opinions

12

regarding Johnson's limitations.  The lack of a meaningful explanation for not providing

Dr. Yang's opinions with controlling weight, "hinders a meaningful review of whether

the ALJ properly applied the treating-physician rule that is at the heart of this regulation."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013)(referring to 20

C.F.R. § 416.927(c)(2)) (citing *Wilson*, 378 F.3d at 544).  Likewise, as Plaintiff correctly

notes, the ALJ's findings are not supported by the record.  In particular, the ALJ finds

that Dr. Yang did not examine Johnson after May 2010, yet the record actually indicates

that Dr. Yang, in fact, asserted that he last examined Plaintiff on November 1, 2010, as

part of preparing his opinion and recorded his height, weight, blood pressure, pulse,

lumbar tenderness, and respiratory rate as of that date.  (Doc. #14, *PageID#* 1249, citing

*PageID#* 1108).  As the ALJ failed to follow the treating physician rule in assessing Dr.

Yang's opinions, her non-disability finding must be reversed.

As highlighted in *Gayheart,* for the treating physician rule to have the meaning and

practical force prescribed in the regulation, the opinion of a treating source may not be

afforded little or no weight simply because it conflicts with the opinions of nontreating

and nonexamining doctors.  *Gayheart,* 710 F.3d at 365.

As the Court of Appeals has explained:

> "'[w]e do not hesitate to remand when the Commissioner has not provided
> 'good reasons' for the weight given to a treating physician's opinion and we
> will continue remanding when we encounter opinions from ALJ's that do
> not comprehensively set forth reasons for the weight assigned to a treating
> physician's opinion.'"

*Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009) (quoting *Wilson*, 378 F.3d at 545).

Likewise, the ALJ's failure to comply with the good-reason requirement was not harmless error in this case.  In *Wilson*, the United States Court of Appeals for the Sixth Circuit remanded the ALJ's decision for failure to comply with the good-reason rule, but nonetheless discussed the possibility that a violation of the good-reason requirement may qualify as harmless error.  *See* 378 F.3d at 547–48, 550.  Specifically, *Wilson* considered three possible scenarios that could lead the Court to a finding of harmless error.  *Id.* at 547.  First, the Court indicated that harmless error might occur "if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it . . ." (*Id.*).  Second, the Court noted that if the ALJ's decision was "consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant." (*Id.*).  Finally, *Wilson* considered the possibility of a scenario "where the Commissioner has met the goal of § 1527(d)(2)-the provision of the procedural safeguard of reasons-even though she has not complied with the terms of the regulation."  (*Id.*).  Since *Wilson*, the Sixth Circuit has continued to conduct a harmless error analysis in cases in which the claimant asserts that the ALJ failed to comply with the good-reason requirement.  *See Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 472 (6th Cir. 2006) (finding that even though the ALJ failed to meet the letter of the good-reason requirement, the ALJ met the goal by indirectly attacking the consistency of the medical opinions); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 749 (6th Cir. 2007) (finding that the facts did not satisfy potential harmless error justifications).

14

Although Dr. Yang's opinions may be inconsistent with other portions of the record, the record contains no indication that Dr. Yang's opinion is "so patently deficient that the Commissioner *could not possibly* credit it . . ." *Wilson*, 378 F.3d at 547 (emphasis added).  Because of Dr. Yang's status as a treating physician, the ALJ was obligated to justify why she rejected his opinion and reached an inconsistent conclusion.  Again, reviewing the ALJ's opinion in light of *Gayheart*, the Court finds that the ALJ did not apply the proper legal standards to Dr. Yang's opinion.

Even if the ALJ somehow properly rejected the opinion of Dr. Yang, she nonetheless also erred in her reliance upon the opinion of Dr. Bolz to support her assessment of Johnson's RFC.  In particular, the ALJ erred by not evaluating Dr. Bolz's opinions under the required legal criteria.  *See PageID#* 51.  Instead, the ALJ merely repeated the limitations Dr. Bolz found and stated, "I agree with these decisions and give them great weight."  (*Id.*).  In doing so, the ALJ therefore failed to comply with the Commissioner's Regulations, which required the ALJ to evaluate the opinions of non-treating medical experts, under the same regulatory factors – supportability, consistency, specialization, etc.  – that apply to treating medical source opinions.  *See* Soc. Soc. Ruling 96-6p, 1996 WL 374180 at *2-*3 (interpreting, in part, 20 C.F.R. §416.927(e)).  Dr. Bolz based his RFC findings on nothing more than the paper file and offers no explanation for the exertional limitations he establishes beyond a recitation of Johnson's impairments.  (*PageID##* 1054-61).  Nothing else in Dr. Bolz's RFC report indicates how he reaches the conclusion other than noting that 5 months after the file was

15

first reviewed, "[Johnson] alleges no changes and updated [medical evidence of record] is consistent with this allegation and this RFC."  (*PageID#* 1056).

Accordingly, for all of the above reasons, Plaintiff's Statement of Errors is well taken.[6]

## VI.    <u>Remand is Warranted</u>

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits.  Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding.  *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming, and because the evidence of a disability is not strong while contrary evidence is weak.  *See Faucher*, 17 F.3d at 176.

Johnson, however, is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of § 405(g), due to the problems

---

[6] Because of this conclusion and the resulting need to remand this case, an in-depth analysis of Plaintiff's remaining challenge to the ALJ's decision is unwarranted.

identified above. On remand, the ALJ should be directed to: (1) re-evaluate the medical source opinions of record under the legal criteria set forth in the Commissioner's Regulations, Rulings, and as required by case law; and (2) determine anew whether Johnson was under a disability and thus eligible for SSI during the period in question.

Accordingly, the case should be remanded to the Commissioner and the ALJ for further proceedings consistent with this Report and Recommendations.

## IT IS THEREFORE RECOMMENDED THAT:

1.    The Commissioner's non-disability finding be vacated;

2.    No finding be made as to whether Plaintiff Alan Johnson was under a "disability" within the meaning of the Social Security Act;

3.    This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. §405(g) for further consideration consistent with this Report; and

4.    The case be terminated on the docket of this Court.

January 9, 2015

        s/Sharon L. Ovington
        Sharon L. Ovington
     Chief United States Magistrate Judge

17

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).